**UNITED STATES**

v.

**Muhammad A. ANSARI, 213 68 3635, Lieutenant Commander (O–4), Medical Corps, U.S. Naval Reserve.**

**NMCM 82 0841.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 20 Aug. 1981.

Decided 11 Feb. 1983.

As Modified March 2, 1983.

LT Judith A. Schevtchuk, JAGC, USNR, Appellate Defense Counsel.

LT Mark A. Zuboff, JAGC, USNR, Appellate Defense Counsel.

John Burwell Garvey, Individual Defense Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C.J., and MIELCZARSKI and BARR, JJ.

CEDARBURG, Chief Judge:

Appellant was convicted by general court-martial comprised of officer members, contrary to his plea, of involuntary manslaughter through culpable negligence. Appellant, a medical doctor and board eligible urologist, was a staff urologist at the Naval Regional Medical Center, Great Lakes, Illinois on 22 March 1979. On that date he performed a surgical procedure upon Sergeant First Class Robert H. Stege, U.S. Army. The intended operation was a varicocelectomy. The operation consists of transecting, or cutting, the left internal spermatic vein, and ligating, or tying off, the two separated ends. The evidence establishes that the left external iliac vein, the vessel returning blood from the left leg to the heart, was transected and ligated during the initial operation. The patient also lost a large amount of blood when a clamp on the distal end of the cut vessel, that is the end away from the heart, slipped during ligature. Following the operation the patient experienced severe pain in his left leg with swelling and discoloration. The next day, after a vascular consultation was arranged, a second operation was performed by a vascular surgeon at which appellant was a second assistant. The patient thereafter developed renal and respiratory complications and was transferred to a nearby Veterans Administration Hospital for hemodialysis and other treatment on 3 April 1979. The patient died on 1 May 1979.

The specification alleged that appellant unlawfully killed Sergeant First Class Stege by his culpable negligence while performing the surgery and by failing to render required post-operative care. The trial, with sessions on various dates in April, June and August 1981, was highly contested. The court members deliberated on the findings in excess of 5½ hours and found appellant guilty as charged. The court members sentenced appellant to be reprimanded and to pay the United States a fine of $2,000.00. The sentence was approved by the convening authority who issued a letter of reprimand and incorporated it as part of his action.

Pursuant to the provisions of Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869, the record was forwarded to this Court by the Judge Advocate General for review. Attention was invited to the following issue:

Did the military judge commit reversible error by not giving the defense-requested instruction regarding the standard for criminal guilt in light of *United States v. Salley,* 9 M.J. 189 (C.M.A. 1980), and *United States v. Cotten,* 10 M.J. 260 (C.M.A. 1981)?

■ Appointment of appellate counsel was directed by this Court and their attention was invited to the issue raised by the Judge Advocate General. Appellate defense counsel submitted assignments of error in addition to the issue prompting the Article 69 referral. We have examined the record of trial, the additional assignments of error and the Government's reply thereto and have concluded that they constitute no error materially prejudicial to the substantial rights of appellant. We do, however, conclude that, as to the issue certified, the military judge committed error requiring reversal of the finding of guilty to involuntary manslaughter. We are nonetheless convinced, beyond reasonable doubt, applying the correct standard, that appellant was not prejudiced by the instructional error in regards to the lesser included offense of dereliction in the performance of duty, a violation of Article 92, UCMJ, 10 U.S.C. § 892. Our reasons follow.

At an Article 39, UCMJ, 10 U.S.C. § 839, session at which instructions to the court members on findings were discussed, the defense made a specific request that the reasonable doubt instruction contained in footnote 4 of *United States v. Cotten,* 10 M.J. 260 (C.M.A. 1981), be given. The military judge denied the defense request, concluding that the definition of reasonable doubt in footnote 4, *supra,* included in Appellate Exhibit 110, had been limited to the facts of the *Cotten* case only. The defense noted its objection for the record. The military judge subsequently gave the standard instruction on reasonable doubt contained in

the Military Judges' Guide. The standard instruction included language found objectionable in *Cotten, supra,* and *United States v. Salley,* 9 M.J. 189 (C.M.A. 1980), which equated "reasonable" with "substantial."

Relying on *Cotten* and *Salley,* appellant's argument hinges on a two-fold analysis: (1) did the defense specifically object to the "reasonable doubt" instruction as given, and (2) was this such a "highly contested" case that the erroneous instruction might be presumed prejudicial. The first requirement was obviously satisfied by the defense proposal of an alternate instruction and by their objection to the instruction actually given by the military judge. The record also supports a conclusion that the case was highly contested. The trial involved testimony from more than 15 different witnesses, most of whom were directly or indirectly involved in the victim's course of treatment. Appellant also testified and steadfastly denied that his actions constituted criminal negligence and, rather, characterized his treatment as demonstrating reasonable medical practice and concern for his patient. Several of the witnesses had a personal interest in any negligence determination, based upon the civil claims which would necessarily flow from the victim's death.

A review of the record indicates substantially controverted facts within the testimony provided by the medical personnel most closely involved with the patient's medical treatment from 22 March 1979 until his demise on 1 May 1979. There was substantial disagreement regarding the post-operative care accorded by the appellant and other medical personnel with varying degrees of treatment responsibility. Much of the testimony focusing on the medical responses to symptoms displayed by the patient was highly subjective. There were direct and implied contradictions of what orders had been given, what information had been conveyed to appellant by staff nurses, and at what time and under what circumstances vascular consultations were requested by the appellant. This conflicting evidence directly affected the resolution of when the actual onset and recognition of vascular complications occurred, the respon-

sibility for delayed exploratory surgery, and the effects of the tardiness in commencement of corrective medical care. The sequence of events was disputed, as was, in the ultimate, the proximate cause of the patient's death. These factual disparities, together with the possibility of one or several intervening causes of death, justify our conclusion that the case, as it affected the verdict rendered by the court members, was highly contested.

The Court of Military Appeals has very recently attempted to clarify the "reasonable doubt" instruction issue which was first raised in *Salley* and *Cotten* and applied in *United States v. Brooks,* 11 M.J. 420 (C.M.A. 1981). In *United States v. Cherry,* 14 M.J. 251 (C.M.A. 1982), the per curiam opinion concluded that from the contested facts set forth in the record, there was a fair risk of prejudice resulting from the improper instruction. The Court's reasoning was summarized in the following operative paragraph:

> In matters of this nature, it is of particular importance in determining whether the accused has been prejudiced not merely to review the record as to the facts and *de novo* decide the accused's guilt; but to consider whether at the time the erroneous instruction was given over objection, a correct instruction *could* have led to a different verdict.

*Cherry, supra* at 252. The language implies that in the context of a contested case, the use of an improper instruction over defense objection will justify a presumption of prejudice. The possibility that a correct instruction could have led to a different verdict will require reversal. Nevertheless, despite our determination that a correct instruction might have led to a different verdict, and that appellant was thereby prejudiced by the finding of guilty to an involuntary manslaughter charge, we conclude that the evidence overwhelmingly demonstrates that appellant misidentified the left external iliac vein to be the left spermatic vein and thereafter transected and ligated that main vein returning blood to the heart from the left leg. This fact was so obviously estab-

lished and accepted by all witnesses that it admits no doubt.

█ The appellant, in his testimony, conceded as much, based upon what he had observed and had come to know subsequent to his performing the initial operation. The evidence again is overwhelming that the initial operation was not conducted in accordance with the standards of medical care and quality of surgical performance existing in the Navy on the date of the operation. The varicocelectomy is a relatively simple and uncomplicated surgical procedure in the urologic field to remedy male infertility. The possibility of a competent and cautious urologist confusing the left external iliac vein with the left spermatic vein is so slight by reason of physical separation and difference in size of the two veins to exclude all except a virtual mathematical certainty. The odds of such a mistake were cited as 1 in 10,000 by a urology expert who characterized the surgical procedure as incompetent and the degree of appellant's negligence as terrible and gross. There is no credible or direct evidence that the deceased possessed a venous anamoly. The testimony of the vascular surgeon who performed the second operation was specific that he did not note any anamoly during the operation or while examining angiograms. We conclude there is no rational basis for appellant's speculation to that effect. Appellant, at trial, requested, and the court members were instructed, that included in the charge of involuntary manslaughter were the lesser offenses of negligent homicide in violation of Article 134, UCMJ, 10 U.S.C. § 934, and dereliction of duty in violation of Article 92, UCMJ. In view of the contested evidence in respect to the proximate cause of death and intervening causes, a correct instruction could have led to a verdict excluding negligent homicide. On the basis of the entire evidence, we conclude that no infirmity is present which would preclude affirming a finding that appellant was derelict in the performance of his duties as a urologist on 22 March 1979 when he misidentified, transected and ligated the left external iliac vein of Sergeant First Class Robert H. Stege, U.S. Army.

Accordingly, only so much of the finding is affirmed as finds that Lieutenant Commander Muhammad A. Ansari, Medical Corps, U.S. Naval Reserve, Naval Regional Medical Center, Great Lakes, Illinois, on active duty, was at Naval Regional Medical Center, Great Lakes, Illinois on or about 22 March 1979, derelict in the performance of his duty as a staff urologist while performing surgery for treatment of primary infertility on Sergeant First Class Robert H. Stege, U.S. Army, in that he was culpably negligent by misidentifying the left external iliac vein to be the left spermatic vein and thereafter transected and ligated the left external iliac vein. We have reassessed the sentence in view of our modifying action and find the sentence remains appropriate. The action of the convening authority and the letter of reprimand incorporated as an integral part of the action thereof is directed to be modified to conform to the findings affirmed above. The sentence thus modified is affirmed.

Judge MIELCZARSKI and Judge BARR concur.